FRANCIS T. DAHLE AN INFANT, BY HIS GUARDIAN *AD LITEM*, FRANK T. DAHLE, AND FRANK T. DAHLE, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. FREDERICK GOODHEER, DEFENDANT, AND PUBLIC SERVICE COORDINATED TRANSPORT, AND JOHN W. RENART, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 10, 1955—Decided November 22, 1955.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Herman H. Wille, Jr.,* argued the cause for defendants-appellants (*Mr. Luke A. Kiernan, Jr.,* attorney).

*Mr. Edward V. Ryan* argued the cause for defendant Goodheer (*Messrs. Ryan, Helfrich & Caruso,* attorneys).

*Mr. Robert P. Hanley* argued the cause for plaintiffs-respondents (*Mr. Serge P. Pizzi,* attorney).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D.   Defendants Public Service Coordinated Transport and John W. Renart appeal from an order entered in the Law Division granting a new trial as to all issues in an automobile-bus collision action which resulted in a verdict of no cause of action in favor of defendants Public Service and Renart, of $1,000 in favor of Frank T. Dahle, individually, against defendant Goodheer, and of $3,000 in favor of Francis T. Dahle, an infant suing by his guardian *ad litem,* against defendant Goodheer.

At about 7 P. M. on June 13, 1953 infant plaintiff was a passenger in an automobile owned and operated by defendant Goodheer, travelling generally west from the Lincoln Tunnel toward the New Jersey Turnpike.   Defendant Renart was driving a Public Service bus in the same direction.   The highway consisted of two lanes on each side of a safety island consisting of grass and curbing.   The accident occurred at a point near an opening in the island about half a mile from the Turnpike toll booths, when the left front of the bus struck the left rear side of the Goodheer car.   It was still

daylight but slightly foggy, the highway was wet and it was drizzling. The infant plaintiff suffered a broken left forearm and a dislocation and fracture of his left elbow. He sues by his father as guardian *ad litem*, and the father seeks damages *per quod*.

The complaint contains general allegations of negligence on the part of Goodheer, Public Service and Renart, and in it each of the plaintiffs sought damages against each of the defendants individually, jointly, or in the alternative. Defendants Public Service and Renart filed answers admitting ownership and operation of the bus and setting up the separate defenses of contributory negligence, sole negligence and common enterprise. Goodheer's answer admitted ownership and operation of the car, denied negligence, and set up the defenses of unavoidable accident and negligence of the co-defendant Renart.

In the pretrial order plaintiffs contended that the Goodheer car, while making a left turn from the inside (fast) lane through an opening in the safety island, was struck in the rear by the Public Service bus operated by Renart, and that the accident was caused by the negligence of Goodheer and Public Service acting by its agent or servant, or one of them. The contention of defendants Public Service and Renart was that the Goodheer car turned to its left directly in front of the bus at a point where such turn was prohibited, that just before this Goodheer had been driving his car in the right or slow lane, that the accident was the result of Goodheer's negligence, and that plaintiff infant was guilty of contributory negligence and, further, was on a joint enterprise with Goodheer. Goodheer's contention was that he had his vehicle in the gap in the center island preparatory to entering the east-bound lane of traffic, and that he had come to a complete stop when the bus travelling in the fast lane hit the left rear of his car; and he further alleged the accident was unavoidable.

As is usually the case in matters such as this, the evidence was in direct conflict. The proof presented on behalf of plaintiffs was that the Goodheer car had been travelling in

the fast lane from the time it left the Lincoln Tunnel until the accident happened. Goodheer was driving; his son was sitting beside him, and plaintiff infant was in the rear seat with Marjorie Goodheer, with whom he was keeping company and whom he married before the trial, on his left and Mrs. Goodheer on his right. Those in the Goodheer car had planned to return to Morristown via Route S-3, but had missed the S-3 turn-off, which was on the right-hand side of the road, because they were travelling in the fast lane. They were looking for a sign which would indicate some route by which they could return to S-3. Defendant Goodheer noticed a sign when 50 to 100 feet from the opening in the center island; he slowed his car from 40 miles an hour to 5, noticed that the sign read "Do Not Enter," shifted into second gear in order to proceed, and was hit in the rear by the bus. His testimony and that of infant plaintiff and his wife Marjorie was that the Goodheer car was facing straight down the highway and had not turned into the opening when the collision occurred. Plaintiff testified that just as the car was slowing down he raised his left arm to put it in back of Marjorie and casually looked to the rear but observed nothing for about 25 feet down the road. He heard nothing before the accident except Marjorie's cry, "Here comes a bus!" Marjorie, in turn, testified that when the car slowed down she turned around to look over her left shoulder—she doesn't know why she turned—and through the rear window of the car saw the bus some 60 feet in back.

Those called by plaintiff were Goodheer, Renart, the infant plaintiff, his wife Marjorie Goodheer Dahle, and one Walter Sicko, Jr. The latter was travelling east toward the Lincoln Tunnel and his testimony was that when he was about 300 to 400 feet from the opening in the island he saw the Goodheer car either opposite the opening or about in it. It appeared that Goodheer was going to turn and Sicko prepared to slow down if he did. The Goodheer car had either stopped or was going very slowly. Sicko started to go ahead again when he saw the bus and a taxi to its right; an accident seemed unavoidable and he put on his brakes. The bus tried

to swerve to the right of the Goodheer car but hit it on the side and swung it around; the car hit the westerly curb of the opening and bounced into Sicko's lane some 30 feet away from his car.

At the conclusion of plaintiffs' case defendant Goodheer rested without producing any witness.

The account of the accident presented on behalf of defendants Public Service and Renart was that the bus was proceeding at about 35 miles an hour in the fast lane when the Goodheer car, travelling in the slow lane to the right, suddenly cut in front of the bus some 30 feet in front and tried to pass through the opening in the island. Renart testified that the car faced with its left side toward the bus when he braked and swerved to the right to avoid a collision. He was unsuccessful and the result was that the bus hit the car, sending it through the opening. Just before the accident he heard some one in the bus scream. The testimony of several passengers tended to support this account, although somewhat tenuously.

Pictures of the automobile and bus introduced in evidence show that the car was hit directly on its left rear side, demolishing the fender and springing the doors; the bus carries the marks of the collision on its left front bumper.

Infant plaintiff suffered fractures of the two fore-bones of the left forearm, and a dislocation and fracture of the left elbow. He was hospitalized for 16 days during which time he was treated for shock, given medication to relieve pain, and operated on twice. The first operation was a closed reduction of the left arm requiring a half-cast, and this was followed by an open operation whereby a torn ligament was repaired with a Steimman pin and wire, following which plaintiff had to wear a full cast for some two months. Plaintiff suffered a permanent loss of 30% of extension and 20% of flexion, and a permanent deformity of the left arm. Because of the ossification of the fragments of bone getting into the muscles, a third operation is probable.

Included in the jury's $3,000 verdict in favor of infant plaintiff against Goodheer was the sum of $756 to cover the

loss of 14 weeks' salary, so that the award for permanent injuries, pain and suffering was $2,244. Plaintiffs moved for a new trial limited to damages against defendant Goodheer only. Goodheer then moved for a new trial on all issues against all parties. In granting the latter motion, the trial judge observed that the vigorously contested question of liability was purely a jury question; that the damages awarded infant plaintiff were totally inadequate; that the verdict was palpably "a mistake" on the part of the jury; and that the testimony was in such a state that it was impossible to say that it clearly and convincingly appeared that the jury "settled the question of liability fairly and upon sufficient evidence so that disassociated from other questions it ought to stand"—obviously a quotation from *Robinson v. Payne*, 99 *N. J. L.* 135, 142 (*E. & A.* 1923). He went on to say that:

"Where the evidence is in sharp conflict it offers the jury the temptation to reach a conclusion that does not represent their conscientious judgment.

The smallness of the judgment gives rise to a serious suspicion that the jury had doubts as to where to place the liability, which prompted a reduction in the amount of damages.

It is reasonably inferable that the verdicts were the result of compromise, and therefore invalid under the principles declared in *Juliano v. Abeles*, 114 *N. J. L.* 510 (*Sup. Ct.* 1935) ; *Robinson v. Payne*, 99 *N. J. L.* 135 (*E. & A.* 1923) ; *Esposito v. Lazar*, 2 *N. J.* 257 (*Sup. Ct.* 1949).

The issues are so intertwined that they cannot be separated. A trial *de novo* shall be had on all the issues."

In the order here under appeal, setting aside the verdict and the judgment entered thereon and directing that a new trial be had as to all issues and all parties, the trial judge stated his conclusion that the verdict was "the result of compromise and indicative of mistake on the part of the jury involving all of the issues presented to them for decision."

Defendants Public Service and Renart were given leave to appeal pursuant to the provision of *R. R.* 2 :2–3 (*b*).

Although plaintiffs initially moved for a new trial limited to damages against defendant Goodheer only, they now seek

to sustain the order of the Law Division granting a new trial as to all issues and all parties, as requested by that defendant, on the ground that the verdict was the result of compromise, citing *Juliano v. Abeles*, 114 *N. J. L.* 510 (*Sup. Ct.* 1935); *Esposito v. Lazar*, 2 *N. J.* 257 (1949), and *Hendrikson v. Koppers Co., Inc.*, 11 *N. J.* 600 (1953). They claim that the two factors present in those cases are also present here, namely, a vigorous contest of the issue of liability, and grossly inadequate damages. Defendant Goodheer advances the same argument. Although the balancing of these factors unquestionably brought about the result in the cited cases, the question of whether a new trial was properly granted in a specific case as to all issues and all parties is not to be decided on so simple a basis. Each case must be considered in the light of its own facts and circumstances. Contrast, for example, *Capone v. Norton*, 8 *N. J.* 54 (1951); *Paolercio v. Wright*, 2 *N. J.* 412 (1949); *Ruth v. Fenchel*, 37 *N. J. Super.* 295 (*App. Div.* 1955).

The present case, unlike *Juliano*, *Esposito* and *Hendrikson*, involves a suit against the owners and operators of both cars which figured in the collision. This distinction, while not determinative, is not without importance in our consideration of the present case. *Juliano* relied in great part upon *Robinson v. Payne*, 99 *N. J. L.* 135 (*E. & A.* 1923), as did *Esposito*. The *Robinson* court held that the then Supreme Court had power to grant a new trial as to damages only when, as was the case there, the only question with respect to which the verdict was wrong was the *quantum* of damages and that question was separable, citing Rules 72 and 73 of the Practice Act of 1912 (*Rules* 131 and 132 of the former Supreme Court). The Court of Errors and Appeals said that:

"* * * If, upon a review of the whole case, it appears that the jury has settled the question of liability fairly and upon sufficient evidence, so that, disassociated from other questions, it ought to stand; but that there has been such error in the determination of damages as requires a new trial upon that question, the court has the power to confine the new trial to the question of damages, and in the interest of justice it should exercise the power. * * * But

this is a power which ought to be exercised with caution, with due regard to the rights of both parties, and only in those cases where it is certain that the error which resulted in excessive or inadequate damages did not affect the other issues. The exercise of the power rests in the sound discretion of the court, and its action will not be disturbed on appeal in the absence of abuse of such discretion. * * *" (99 *N. J. L.*, at *page* 142)

The former Supreme Court in the *Juliano* case, after quoting from *Robinson v. Payne*, said that:

"* * * the limitation of a new trial to the ascertainment of the *quantum* of damages will not be ordered unless it clearly appears that the ends of justice will be served thereby. To justify such a limitation, that question must be entirely distinct and separable from the issue of liability; otherwise such procedure would work a denial of a fundamental right. * * * It must be evident, if that course is to be pursued, that the verdict on the basic issue of liability is not tainted with illegality. * * *" (114 *N. J. L.*, at *page* 512).

*Justice v. Weise*, 14 *N. J. Super.* 9 (*App. Div.* 1951), is also cited in support of the trial court's action. In that intersectional collision case the owner of one car, and two of her passengers, sued the owner of the other car for property damage and personal injuries, and the latter counterclaimed for property damage. There was a second action in which a passenger in the second car sued the owners of both cars. The cases were consolidated for trial. In the first action the jury returned a verdict giving the owner of the first car property damages far below those stipulated in the pretrial order, and awarded only medical expenses to the two passengers, and nothing for their disability, pain and suffering. In the second action the jury returned a verdict in favor of the passenger of $5,000 against the owner of the second car only. There was a no cause verdict on the counterclaim of the owner of the second car. All motions for a new trial were denied. The Appellate Division reversed, stating that the ends of justice would best be served by a trial as to all issues, citing the *Robinson, Juliano* and *Esposito* cases, above. The appellate court held the verdicts in the first case to be palpably the result of mistake. The sharp conflict in the

evidence offered a temptation to the jury to reach a conclusion that did not represent its conscientious judgment; and the smallness of the verdicts gave rise to a serious suspicion that the jury had doubts as to the liability of the owner of the second car. It was therefore reasonably inferable that the verdicts were the result of compromise, and hence invalid. The reasoning of the court as to the verdicts in the first action is understandable in light of the three cases on which it relied. As to the verdict in the second case, in favor of the passenger against only the owner of the second car, the court held that the question of the liability of the owner of the first car was "so interwoven and correlated" with the question of liability on the part of the owner of the second car that it was not susceptible of separation. The reason for this conclusion is less apparent on the record than it must have been in the court's mind.

In the present case we have but a single action brought against Goodheer, the driver of the automobile, and Public Service and Renart, the owner and operator, respectively, of the bus. In its charge the court stressed that the jury in the first instance take up the question of liability and determine whether the negligence of one or the other party, or both, was the proximate cause of the accident. This instruction that the jury determine where negligence lay as between Goodheer and Public Service, acting through its agent, or against both, was repeated several times. It was only after the jury had determined liability that it was to take up the question of damages. Among other things, the court also charged Public Service's request on the subject of "imminent peril" or "sudden emergency." The jury was out well over three hours. The vote was 11-1 in finding Goodheer liable and returning a verdict of no cause of action against Public Service and its driver. The vote on the question of damages was unanimous.

It is clear that the jury carefully deliberated the question of liability, and its verdict finds adequate support in the record. Not only did it hear the witnesses and observe their demeanor, but it also was informed in the course of the sum-

mation of counsel for Public Service and Renart of the representation by plaintiffs and Goodheer in the pretrial order that the Goodheer automobile had made a left turn through the opening in the safety island preparatory to entering the east-bound lane of traffic. (This was revealed on oral argument by counsel for Public Service, and not contradicted.) The jury also had as a guide the charge of the court, which all parties find unexceptionable.

It is to be observed that the trial court, in granting a new trial as to all issues and all parties, relied upon the *Robinson, Juliano* and *Esposito* cases. We can understand this insofar as defendant Goodheer is involved. The award of only $3,000 to plaintiff infant against Goodheer was palpably inadequate. But we cannot perceive why this result found against one driver should infect the verdict of no cause of action found as to defendants Public Service and Renart. The jury obviously chose to believe the testimony supporting the claim that there was no negligence on the part of the bus company and its driver. We perceive no compromise in this; we consider the assessment of damages against Goodheer as unconnected with the question of liability against the other defendants.

The rationale of the cited cases relied upon by plaintiffs and Goodheer is that where there is a close question of liability as between the plaintiff and a defendant against whom a grossly inadequate award of damages is returned, there is strong ground for suspicion that the low verdict is evidence of the price of concurrence on the issue of liability against the defendant exacted by those members of the jury inclined against such a finding. But in the present case there is no close question of liability as between infant plaintiff and defendant Goodheer, the beneficiary of the paucity of the award. The record overwhelmingly attests the negligence of Goodheer. The basis of the *ratio decidendi* of the cited cases is therefore not applicable here. The only close question as to liability here presented is as to whether the verdict should not have run additionally against defendants Public Service and Renart. There is no perceivable inferential rela-

tionship between the inadequacy of the award against Good-heer and the exculpation by the jury of the other two defendants on a factual case rendering that result in nowise capricious or suspicious.

The trial judge, in his opinion granting a full new trial, stated that the question of liability was vigorously contested between the defendants. But this is always so in a collision case. The trial judge also observed that the award was totally inadequate and palpably "a mistake on the part of the jury" and "the result of compromise." He does not attempt to explain wherein the mistake or compromise resided. He also said that the testimony was in such a state that it was impossible to say that "it clearly and convincingly appears that the jury 'has settled the question of liability fairly and upon sufficient evidence so that disassociated from other questions it ought to stand.' "

*R. R.* 4:61–1 states the primary considerations that should control a trial judge in granting a new trial. He is not to set aside the verdict of the jury as against the weight of evidence "unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion." It was said in *Hager v. Weber*, 7 *N. J.* 201, 210 (1951), that a court may not set aside a verdict merely because, in its opinion, the jury upon the evidence might well have found otherwise. This conception of the weight of the evidence was stated to govern the trial court as well as the appellate court. See *Monihan v. Public Service Interstate Transp. Co.*, 22 *N. J. Super.* 149 (*App. Div.* 1952).

The opinion of the trial judge throws little light upon the basic and operative reasons which motivated him in granting a full new trial. He failed to give any reason indicating that the amount of the award against defendant Goodheer had any connection with the previously determined question of liability by the jury whereby it exonerated defendants Public Service and Renart. We must have more than this; otherwise, in some cases, we would have little more than the

visceral reaction of the trial judge to go on. A very careful reading of the record and of the charge reveals nothing to support the order below. There was no mistake in the theory upon which the case was tried, no prejudicial trial error, and no error or obvious omission in the charge. Compare *Hartpence v. Grouleff*, 15 *N. J.* 545, 548–9 (1954).

It is urged upon us that in the circumstances here present the *Hartpence* case must result in an affirmance of the order under appeal. The now familiar language of the Supreme Court is quoted to us: a trial judge is in a better position "to decide whether justice has been done under the particular circumstances and the weight of the credible evidence"; he is in a position "to know and equate all the factors, including any error he may have made, and establish a basis which leads to the conclusion that the verdict was the result of passion, mistake or prejudice." 15 *N. J.*, at *page 549*. We are sensitive to the *Hartpence* doctrine—see, for example, *Gallichio v. Gumina*, 35 *N. J. Super.* 442 (*App. Div.* 1955). We do not consider *Hartpence* as discarding the rule of *Hager v. Weber*, above; that case was not even mentioned in the course of the opinion, and we consider the rule enunciated in *Hager* as still possessing viability and pertinence. We view *Hartpence* as supplementing the *Hager* rule and as lending emphasis to the considerations which must attend our review of the action of a trial judge in granting or disallowing a new trial as to damages only, or as to all issues and parties.

Giving full consideration to the injunction set out in *Hartpence v. Grouleff*, we are of the opinion that it clearly and unequivocally appears that the action of the trial judge in granting a new trial as to all parties and all issues was a manifest denial of justice under the law. That action is not supportable on any rational view of the case, even in the light of his having seen and heard the witnesses. *Gallichio v. Gumina*, above, at *page* 447.

The new trial should have been limited to the question of damages as to defendant Goodheer only. The jury properly established his liability but went astray in awarding inade-

quate damages—this for the possible reason that damages were being assessed against infant plaintiff's father-in-law.

The order under appeal is modified so as to grant a new trial as against defendant Goodheer only on the single question of damages.