473 So.2d 947 (1985)
Alyce R. CLARK
v.
COLUMBUS & GREENVILLE RAILWAY COMPANY, et al.
No. 54922.
Supreme Court of Mississippi.
July 31, 1985.
*948 Douglas J. Smith, Jr., Robertshaw, Terney & Noble, Greenville, for appellant.
Howard Q. Davis, Jr., Clark, Davis & Belk, Indianola, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:
This appeal arises out of a wrongful death action in the Circuit Court of Sunflower County and presents a rather novel theory as to why an unsuccessful plaintiff should get a second bite at the apple. The plaintiff/appellant represents the wrongful death beneficiaries, parents and sister of Holly Hendricks Clark, the nineteen year old decedent, a guest passenger on the occasion in question. See Miss. Code Ann. § 11-7-13 (Supp. 1984). Two defendants were named in this case, Teresa Aycock, the nineteen year old driver of the automobile in which the decedent was a passenger, and Columbus & Greenville Railway Company, with whose train the Aycock automobile collided. C & G Railway is the sole appellee here.
On July 9, 1982, the jury returned a verdict for Clark against the host driver Aycock for $3,015.00 but found in favor of C & G and against Clark, who thereupon filed a motion for a new trial against C & G and for an additur or in the alternative a new trial on damages only as to Aycock. The motion was overruled as to C & G but sustained as to Aycock, the damages portion of the verdict against Aycock having been found against the overwhelming weight of the evidence and evincing bias, passion and prejudice on the part of the *949 jury in favor of Aycock and against Clark. Aycock had the option of accepting an additur of $50,000.00 or suffering a new trial on the issue of damages only. Clark subsequently settled with Aycock and the appeal here is against C & G only.
The single assignment of error is that the trial court erred when it refused plaintiff a new trial against C & G. Plaintiff's rationale is that the undisputed evidence shows, and the trial court held, that the jury was irresponsible in its deliberation on damages as to Aycock and these circumstances give rise to a conclusive presumption that the jury also acted irresponsibly and out of bias, passion and prejudice against Clark in returning a verdict for C & G on the liability phase of the case.
The fatal accident which has given rise to this action occurred on August 10, 1981, around 11:00 p.m. The scene was the C & G intersection with Highway 49 southeast of Indianola, Mississippi. The intersection is roughly perpendicular, with the railroad tracks running east and west and the highway running north and south. Holly Clark, the deceased, and Teresa Aycock were riding in a car driven by Teresa returning from a party they had attended that evening. The train was stopped, blocking the entire intersection of the railroad tracks and Highway 49, as the Aycock car approached from the north.
There was testimony by several witnesses that the C & G's red warning lights were malfunctioning in the sense that they had been continuously blinking for several days before the accident occurred. One point never disputed was that at and immediately prior to the time of the accident, the red danger lights at the crossing of Highway 49 and C & G Railroad were flashing.
For example, William McMurtray, Jr., a witness for plaintiff who was stopped on the South side of the tracks waiting for the train to clear the intersection at the time of the accident, testified, "When I approached the intersection of the C & G Railroad and Highway 49, I saw the signal lights at the intersection flashing, and I slowed down ..." Plaintiff's witness Leslie Anderson, who arrived immediately after the accident, testified, "When I arrived at the scene, I observed the Railroad's signal lights were blinking, I saw them blinking as I approached the Railroad track prior to the accident."
The Aycock automobile struck the north side of the train at the twelfth boxcar and went up under the train. The driver, Teresa, was rendered semiconscious and bleeding. Holly Clark was killed. The Aycock vehicle left skid marks for fifty-five feet and four inches. Plaintiff's theory against C & G at trial was reminiscent of the familiar fable of the boy who cried, "Wolf". Plaintiff charged that, by allowing the red warning lights to flash continuously for several days while no train approached the C & G lulled motorists such as Aycock into a false sense of security. The jury's verdict, if taken at face value, suggests that Aycock should in any event have heeded the red flashing wolf cry.
In this context, Plaintiff Clark tells us that "The precise question presented on this appeal is:
(a) If it is undisputed that:
(i) The Court [correctly] instructed the jury that Clark was not chargeable with contributory negligence as a matter of law; and
(ii) The Trial Court [correctly] instructed the jury to return a verdict for the ... [Plaintiff] against Aycock; and
(iii) The ... [Plaintiff's] damages range from $3,200.00 (actual funeral expenses) to $207,298.00 (testimony of an economist); and
(iv) The trial started at approximately 2:00 p.m. on Tuesday, July 6, 1982, and a total of 32 witnesses testified for all parties; and
(v) The jury deliberated for only 45 minutes and in the face of an Order from the Court to return a verdict for the ... [Plaintiff] against Aycock, without considering any contributory negligence by Clark; and
(vi) The jury returned a verdict in favor of the Plaintiff against Aycock for *950 only $3,015.00 ($185.00 less than the actual funeral expenses) and in favor of C & G [on liability].
(b) If the above is undisputed, then should there be a conclusive presumption that the jury failed to do its duty and acted out of bias, passion and prejudice by returning a verdict favorable to C & G since it is undisputed and manifest that the jury failed to do its duty and did, in fact, act out of bias, passion and prejudice by failing to respond to the evidence on damages as to Aycock?
The answer, in a word, is, "No." The jury verdict returned in so much of the case as was an action by Alyce R. Clark against Columbus & Greenville Railway Company is to be judged according to our familiar and well established rules respecting when a new trial may be ordered, notwithstanding that such verdict as may have been returned against the codefendant must be vacated on the issue of adequacy of damages.
The question necessarily tendered by Clark's assignment of error is whether the trial judge erred in overruling Clark's motion for a new trial filed against the C & G. The grant or denial of a motion for a new trial is and always has been a matter largely within the sound discretion of the trial judge. Dorr v. Watson, 28 Miss. 383, 395 (1854). See Rule 59, Miss.R.Civ.P. The credible evidence must be viewed in the light most favorable to the non-moving party. The credible evidence supporting the claims or defenses of the non-moving party should generally be taken as true. When the evidence is so viewed, the motion should be granted only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict if allowed to stand would work a miscarriage of justice. Our authority to reverse is limited to those cases wherein the trial judge has abused his discretion. Jesco, Inc. v. Whitehead, 451 So.2d 706 (Miss. 1984); Tucker v. Kelly, 381 So.2d 1030, 1032 (Miss. 1980); Mississippi State Highway Commission v. Hancock, 309 So.2d 867, 871 (Miss. 1975); Taft v. Southland Communications, Inc., 253 Miss. 204, 208, 175 So.2d 515, 516-517 (1965); Danner v. Mid-State Paving Co., 252 Miss. 776, 782, 173 So.2d 608, 610-11 (1965).
This brings us to consider whether under the evidence the jury could reasonably have found that C & G was not negligent or, in the alternative, whether the jury could reasonably have found that the sole proximate cause of the accident in question was the negligence of Aycock. We have little trouble in giving an affirmative answer to each of these questions.
The evidence reflects that the train was stopped completely blocking Highway 49 as it crossed the railroad tracks. The red danger signals were flashing. Our cases recognize that, where wrongful death or personal injury actions are brought against a railroad arising out of collisions occurring in such settings, whether the railroad was negligent is generally a question for the jury. Boyd v. Illinois Central Railroad Company, 211 Miss. 409, 420, 52 So.2d 21 (1951). That there may be evidence in the record which would have been sufficient to uphold a jury verdict for plaintiff against the C & G had one been returned is beside the point. We have too many cases recognizing that ordinarily a train legitimately stopped or standing over a public crossing because of its tremendous size is all the warning the traveling public is entitled to. These cases proceed upon a view of the law that precludes any notion that under these circumstances a directed verdict for plaintiff could have been granted. See, e.g., Illinois Central Railroad Company v. McNeil, 205 Miss. 807, 814, 39 So.2d 490, 491 (1949); Mississippi Export Railroad Company v. Summers, 194 Miss. 179, 192, 11 So.2d 429, 430 (1943); and Gulf Mobile & Northern Railroad Company v. Holifield, 152 Miss. 674, 675, 679-80, 120 So. 750, 751 (1929). While we recognize an exception to this rule in cases where because of peculiar environment or landscaping or other circumstances the railroad should forsee that motorists may not see the train, even then *951 the issue of the railroad's negligence is at best a jury question. See Boyd v. Illinois Central Railroad Co., 211 Miss. 409, 420, 52 So.2d 21, 27 (1951).
Under the standards announced in the cases cited above, we can only conclude that the jury's verdict on the issue of the C & G's negligence was responsive to the evidence. Alternatively, a reasonable jury would have been well within its authority to find that, even if the C & G were negligent in some respect, the sole proximate cause of the accident in question was the negligence of Teresa Aycock, the driver of the automobile in which Holly Clark was riding. Accordingly, the trial judge's refusal to grant Clark a new trial against C & G was well within his discretion and would ordinarily be wholly beyond our authority to disturb.
Clark has conceived the theory that somehow the verdict returned on the case against Aycock sufficiently infects the verdict in the case against the C & G so that the latter should be set aside. Clark argues that the effect of the trial judge's additur ruling against Aycock amounted to a judicial determination that the verdict on Clark's claim vis-a-vis Aycock was infected with bias, passion and prejudice against Clark and under such circumstances that there should be a presumption that the same bias, passion and prejudice existed in favor of C & G. The argument is specious.
First, the issue with respect to which the trial judge held that the jury's verdict was against the weight of the evidence had to do with the damages aspect of the claim against Aycock. Why that should necessarily infect the jury's approach to liability against C & G is not clear. There are apparent reasons why the jury might have been disposed to favor Aycock in disregard of the law and the evidence which would have nothing to do with the C & G. Because Aycock was a young girl without apparent wealth or significant assets, the jury could well have felt that imposition of a substantive judgment would have been unfair or unjust (assuming, of course, that the jury did not know or suspect that Aycock was covered by liability insurance). Moreover, the evidence reflects that the Aycock girl was seriously injured in the accident and the jury may well have reasoned that she and her family had suffered enough. This rationale, however, would have no application to the C & G which in the eyes of any jury is surely a "deep pocket". Teresa Aycock and Holly Clark appear to have been good friends, and the jury may have reacted negatively to the Clarks suing their deceased daughter's friend. Or, perhaps the jury made a mistake on the funeral expense calculations and denied any other damages because the Clarks didn't seem to be out of pocket anything except funeral expenses. All of these possible explanations for the verdict would be contrary to law, but none has anything to do with C & G.
Clark cites one case in support of her premise, the Florida case of Robinson v. Allstate Insurance Company, 367 So.2d 708 (Fla.App. 1979), a case which we have reviewed and find inapposite. Those other states which have confronted circumstances analogous to those presented here appear to have held consistently that a determination of inadequacy of the damages verdict returned by the jury against one defendant in no way operates to give plaintiff a second shot at a co-defendant exonerated by the jury. Williams v. Williams, 246 S.C. 158, 142 S.E.2d 858, 860-61 (1965); Greco v. 7-Up Bottling Co., 401 Pa. 434, 165 A.2d 5, 13 (1960); Dahle v. Goodheer, 38 N.J. Super. 210, 118 A.2d 547, 552 (App. Div. 1955); Goldstein v. City of New York, 281 A.D. 712, 118 N.Y.S.2d 48, 50 (1952).
The sources of potential liability of the two defendants in this case sprang from totally independent sources, factually and legally. The jury's assessment of damages against Teresa Aycock in fact and in law had no bearing on its finding of no liability on the part of C & G Railway Company. We decline Clark's invitation to engage in rank speculation and find the jury's exoneration of the C & G infected with the virus which has rendered the damages award against Aycock susceptible of challenge, a *952 virus we will regard as legally non-contagious until someone makes a far stronger showing than has been presented today. Having in mind our scope of review of the action of a trial court in granting or refusing a new trial as articulated above, we have no authority but to affirm.
AFFIRMED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.