MARYLAND COAL & COKE CO. v. QUEMAHONING COAL CO.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 885.

1. SALES (§ 418*) — ACTION BY BUYER FOR BREACH OF CONTRACT — DAMAGES — CONSEQUENTIAL DAMAGES FOR FAILURE TO DELIVER.

In an action by a purchaser against his vendor for failure to deliver, he cannot recover as special damages the damages for nondelivery suffered by his subvendee, in advance of their payment, unless his own liability therefor is absolute and certain.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1195, 1196; Dec. Dig. § 418.*]

2. SALES (§ 418*) — ACTION BY BUYER FOR BREACH OF CONTRACT — SPECIAL DAMAGES — PREMATURE BRINGING OF ACTION.

Defendant contracted to sell and deliver to plaintiff 300 tons of coal per day for a year, and at the same time, with defendant's consent, plaintiff contracted to deliver the same coal to a steel company at an advance of two cents per ton; the contract providing that it would make every effort for prompt and faithful performance, but would not be responsible for delivery if prevented by strikes or "any occurrence beyond seller's control." Defendant having defaulted in delivery, plaintiff sued to recover as its direct damages two cents per ton on the shortage, and also as special damages the amount of a claim made against it by the steel company for breach of its contract, but which had not been adjudicated. Held, that as to the claim for special damages the action was premature, and should have been dismissed without prejudice, until plaintiff's liability to the steel company had been adjudicated; the court having no power to construe the contract between them in an action to which such company was not a party.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 418.*]

In Error to the Circuit Court of the United States for the District of Maryland, at Baltimore.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Maryland Coal & Coke Company against the Quemahoning Coal Company. Judgment for defendant, and plaintiff brings error. Reversed.

See, also, 176 Fed. 309.

Frank Gosnell and Carroll T. Bond (Charles F. Uhl, Jr., on the brief), for plaintiff in error.

Ernst O. Kooser and Frederick Dallam (Ogle Marbury and Edmund E. Kiernan, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and KELLER and McDOWELL, District Judges.

KELLER, District Judge. This was a suit in assumpsit, originally brought by the plaintiff in error (hereinafter called the plaintiff), a West Virginia corporation, against the defendant in error (hereinafter called the defendant), a Pennsylvania corporation, in the superior court of Baltimore city, and removed thence to the United States Circuit Court for the District of Maryland by a petition duly filed by the defendant.

As no motion to remand the case for want of jurisdiction was made by the plaintiff, but, on the contrary, the plaintiff acquiesced in the jurisdiction entertained by the Circuit Court, no question as to the jurisdiction of that court arises in this case so far as the parties are concerned. Foulk v. Gray (C. C.) 120 Fed. 156; In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904.

The plaintiff, in addition to the common counts in assumpsit, declared upon a special count founded upon an alleged breach of a contract in writing between the plaintiff and the defendant, evidenced by the following letter and acceptance:

"Quemahoning Mines, Ralphton, Pa.

"D. B. Zimmerman, President.

"(Quemahoning Coal the Best Steam Coal.)

"Quotations subject to change without notice, and deliveries subject to car supply, strikes, accidents, and any other causes beyond our control.

"Railroad weights govern all sales.

"Quemahoning Coal Company.

"Miners and Shippers of Bituminous Coal.

"Offices: Somerset, Pa., Aug. 5, 1905.

"Maryland Coal & Coke Co., Baltimore, Md.—Dear Sirs: In reply to your letter, I will agree to furnish three hundred tons coal per day from our Quemahoning mines at $1.00½ f. o. b. cars at the mines. This coal must all apply to the Maryland Steel Co. upon their contract. This contract to run one year from this date. You people to furnish the Maryland Steel Co. cars at times when I am short on B. & O. cars or my own equipment.

"Yours truly,                                    D. B. Zimmerman.

"Aug. 5, 1905. Accepted.                    Maryland Coal & Coke Co.,
                                               "By Geo. P. Spates, V. P.

"We get $1.02½ from Md. Steel Co."

In a statement of account appended to the declaration the plaintiff claimed that the defendant failed to deliver 43,634.483 tons of the coal

contracted to be delivered, and that the difference between the contract price of such coal and the market value at the time and place deliveries should have been made was $7,426.02. The defendant, in addition to the general issue, pleaded that plaintiff was indebted to it in a greater amount than the plaintiff's claim. By stipulation of counsel a jury was waived, and the evidence submitted to the court in lieu of a jury.

From the findings of facts made by the trial court it appears that the letter or contract heretofore quoted, was made in pursuance of a telephonic conversation had on July 31, 1905, and that on August 1, 1905, a contract was entered into between the plaintiff and the Maryland Steel Company in the following words and figures:

"Contract (In Duplicate).

"Baltimore, Md., August 1, 1905.

"Maryland Coal & Coke Company agree to sell, and Maryland Steel Company agree to buy:

"Material.—Quemahoning Coal, mined by Quemahoning Coal Co.

"Quantity.—Three to four hundred tons per day from August 1, 1905, to August 1, 1906.

"Delivery.—F. o. b. cars at mines.

"Shipments.—Daily, except Sundays.

"Price.—One dollar and two and a half cents ($1.02½) per ton of 2,240 pounds.

"Terms.—Cash on 25th of month following that in which shipments are made.

"Ship to.—Maryland Steel Company, Baltimore Coal Piers, or Sparrow's Point, Md.

"Note.—Cars to be supplied by Maryland Steel Company to take this coal.

"Railroad scale weight at point of shipment to govern settlement.

"Every effort will be made for the prompt and faithful fulfillment of the contract, but seller will not be responsible for the delivery of the same if prevented by strikes and combinations of miners and laborers, accidents in the mines, or interruption of transportation, or from any cause or any occurrence beyond seller's control. In such cases, obligations to deliver coal under this contract are thereby canceled to an extent corresponding to the duration of such interruptions and no liability shall be incurred by seller for damages resulting therefrom.

"Buyers will not be under obligations to receive coal under this contract, providing works are not in operation, and due notice thereof is given to seller.

"Maryland Coal & Coke Company.

"Geo. P. Spates, V. P.

"Accepted.                     Maryland Steel Company,

"By Frank Tenney, Asst. to President."

The trial court, referring to the addendum to the contract of August 5, 1905, between the parties, finds:

"The words 'We get $1.02½ from Md. Steel Co.' were added by Mr. Spates, of the plaintiff corporation, at the request of Mr. Zimmerman, of the defendant corporation, and I find as a matter of fact that this was part of the contract and one of its terms, and was a reasonable and proper provision to limit and assure the amount of profit which the plaintiff was to receive as middleman in the transaction, and which, in case of breach by the defendant, the plaintiff might claim as an element of damages."

The court further found as a fact that the amount of coal that should have been delivered under the contract was 91,800 tons, and that of this amount 49,665.517 tons were actually delivered, leaving

42,134.483 tons which were not delivered, and that there were not such interruptions in the working of the mines as prevented these deliveries, but that the defendant delivered such coal to other purchasers under contracts entered into subsequent to the date of the plaintiff's contract, and at prices higher than those therein specified. The court also found as a fact that the plaintiff was indebted to the defendant in the sum of $3,917.79 for coal delivered and not paid for under the contract, and that the plaintiff was entitled to damages at the rate of 2 cents per ton for the 42,134.483 tons of coal not furnished by defendant, amounting to $842.69.

The court further found that the Maryland Steel Company (the vendee of the plaintiff) expended, for coal to take the place of the coal not furnished by the defendant, the sum of $6,320.34, in excess of the amount which it would have paid for the coal if furnished by the plaintiff under its contract with said Maryland Steel Company, and that, before this suit was brought said Maryland Steel Company made demand upon plaintiff for said sum of $6,320.34, as its loss and damage. The court, however, concluded as a matter of law, that:

"In view of the efforts made by the plaintiff, as found by the court, to cause and procure the defendant to abide by and fulfill its contract with the plaintiff, and to furnish the 42,134.483 tons of coal not in fact delivered, defendant's breach of its contract is, as matter of law, such cause or occurrence beyond the plaintiff's control as, under the terms of the plaintiff's contract with the Maryland Steel Company, canceled the obligation of the plaintiff to deliver to the Maryland Steel Company the said 42,134.483 tons of coal, and rendered the plaintiff free from any liability to the Maryland Steel Company for the loss and damage of the latter company by reason of nondelivery of such coal, and therefore the plaintiff has no liability to the Maryland Steel Company on account of the increased cost of the coal bought and substituted by the Maryland Steel Company, as above mentioned, and the defendant is not liable in damages to the plaintiff by reason thereof."

The court thereupon entered judgment for the defendant for $3,-075.10, the difference between $3,917.79, the value of the coal delivered and not paid for, and $842.69, the amount of the plaintiff's profit of 2 cents per ton on the coal not delivered.

The sole ground of complaint by the plaintiff is that the court concluded that, under the contract made between the plaintiff and the Maryland Steel Company, the latter company would have no valid ground of recovery against the plaintiff, and hence the plaintiff could not recover of the defendant damages which it could not suffer. As stated by the brief of counsel for plaintiff in error, after quoting the clause in its contract with the Steel Company beginning "Every effort will be made for the prompt and faithful fulfillment of the contract," etc. :

"The whole question on this writ of error is whether, upon the proper construction of his clause, the seller, the Coal & Coke Company, was relieved by it from liability to the Steel Company for the excess amount paid by the latter in the purchase and substitution of coal."

That surely is the whole question, but this court fails to see how it was expected that that question could be settled in this case, as it cannot be successfully contended that a finding either way upon this

question would render it res adjudicata as between the Steel Company and the Coal & Coke Company.

That there are cases in which the original vendee may recover from his vendor the damages for nondelivery suffered by his subvendee, in advance of their payment, is doubtless settled by the cases of Josling v. Irvine, 6 H. & N. 512, Randal v. Rapier, 96 English Common Law Reports, 82, and many other English and American authorities; but in none of these cases, so far as we have been able to discover, was it necessary for the trial court to construe a relieving clause in the contract between the original vendee and his subvendee. A brief examination of the two leading English cases just cited may serve to illustrate their wide difference from the case at bar.

Josling v. Irvine:

In this case Irvine sold by sample to Josling, 3,000 gallons of naphtha at 2s. 6d. per gallon. Josling resold the same to Hoile & Co., also by sample, at 2s. 6d. per gallon. The defendant failed to deliver the naphtha. It was proved that Hoile & Co. had demanded from plaintiff the difference between 2s. 6d. per gallon and 5s. 9d. per gallon, and it was also proved that the latter figure was the value in the market of naphtha of the quality of the sample, and that naphtha of like quality could not have been bought by Hoile & Co., at the time of the breach, for less than said sum per gallon. The trial court instructed the jury to give the plaintiff such an amount as would enable him to pay the assignees of Hoile & Co., who in the meantime had become bankrupt. The jury having given the amount claimed, held, that the damages were rightly assessed, and that there was no misdirection. In his opinion sustaining the trial court, Baron Bramwell said:

"There is no real difference between my opinion and that of my Brother Erle as expressed in the case of Randal v. Rapier. When a person has bought an article, and the seller does not deliver it, if the buyer can go into the market and get it elsewhere, the difference between the two prices, if any, is the measure of damage. Here it was proved that the plaintiff could not have bought naphtha of the same quality as that contracted to be sold except at an increase of price equal to the damages claimed. If one has the sagacity to discover the value of an article which another possesses, and buys it, he is entitled to the benefit of his bargain. Randal v. Rapier is distinguishable from the present case, for the seller, by delivering barley not equal to contract, the defect in which could not be discovered until the barley was delivered, deprived the buyer of the opportunity of going into the market and getting another barley."

Randal v. Rapier:

In this case the defendant had sold to the plaintiff seed barley, warranting it to be of a particular quality known as "Chevalier" barley, but had delivered barley of an inferior quality; and it was alleged as special damage that plaintiff, relying on the warranty, had sold the seed barley to T., who had sown it, and had thereby obtained a crop inferior to that which would have been produced by barley of the quality warranted, and so suffered damages which the plaintiff was bound to make good. Upon the execution of a writ of inquiry, after a judgment by default suffered by defendant, evidence was given of the difference in value of the crop actually produced from the seed sold

and the crop which would have been produced by seed barley of the quality warranted. It further appeared that plaintiff's vendee had claimed from him compensation, which plaintiff had agreed to make, but no sum had been actually agreed upon and no payment actually made. Held, that in assessing the damages the jury ought to include the amount to which they considered the plaintiff had become liable to his vendee in respect of the difference of the crops.

In the opinions of the justices delivered in this case there was some difference of view as to whether damages not actually paid by plaintiff could be recovered; Wrightman, J., being of opinion that they ought not to be allowed until paid, while Lord Campbell, C. J., Compton, J., and Erle, J., held that they might—Erle, J., saying:

"I think the true rule is that a liability to loss is sufficient to give the party liable a title to recover."

Accepting this statement as correctly laying down the law, it seems to us apparent that it is not applicable to the facts of the case at bar, because it cannot be said with certainty that the plaintiff has incurred a liability to the Maryland Steel Company, and we think that the liability referred to by the English court as sufficient to warrant recovery of the special damage must be an absolute liability, not requiring the interpretation of a special contract to ascertain its existence. In the case at bar the trial court held that no liability existed by reason of the relieving clause in the contract between the plaintiff and the Maryland Steel Company. However, it is manifest that that court's finding in that respect is not binding on the Steel Company, which was not a party to the action, and it will have a right to a judicial construction of its contract with the plaintiff, by a court of competent jurisdiction. In the event that such court held that plaintiff was liable to the Steel Company under the contract between them, the amount of such recovery would be, at least, prima facie evidence of the amount it should recover, by way of special damage, from the defendant in error. Reggio v. Braggiotti, 7 Cush. (Mass.) 166.

The broad distinction between the two English cases referred to and quoted from, and the case at bar, is that in both of the former the liability of the plaintiff was absolute, and the only subject of inquiry was as to the amount. There was no necessity to judicially construe any contract between the plaintiff and his subvendee, because there was no relieving clause in such contract. Here the very finding of the trial court, that the Coal & Coke Company, by virtue of the relieving clause in its contract with the Steel Company is not liable for the damages claimed by the Steel Company, illustrates the danger and difficulty of at all extending the doctrine laid down in Josling v. Irvine and Randal v. Rapier. In those cases there was and could be no doubt of the liability of plaintiff to his subvendee. In this case that is certainly a serious question, and one requiring a judicial construction of a written contract.

It is manifest, therefore, that plaintiff cannot be said to be under an absolute liability to the Steel Company until the contract between the parties is judicially construed by a court of competent jurisdiction, and inasmuch as, under the doctrine laid down by the English cases

quoted from, the plaintiff's right to sue for such special damages cannot be said to arise until his liability for them exists, it follows, in our view, that the court below erred in its third conclusion of law, to the effect that "the plaintiff has no liability to the Maryland Steel Company on account of the increased cost of the coal bought and substituted by the Maryland Steel Company, as above mentioned, and the defendant is not liable to the plaintiff by reason thereof," for the reason that the court had not jurisdiction to determine that fact, inasmuch as the Maryland Steel Company was not before the court as a party, and is entitled to a judicial construction of its contract by a court of competent jurisdiction in an action against the Maryland Coal & Coke Company.

We conclude that the case at bar, in so far, and in so far only, as it was brought to recover the special damages claimed from the plaintiff by the Maryland Steel Company, was prematurely brought, and that that feature of the litigation should be dismissed without prejudice to a new action therefor in the event that its liability to the Steel Company is judicially determined.

The judgment in this case entered is, in our opinion, correct as to amount, but should be amended so as to be without prejudice. As, in this view of the case, it cannot be said that either party has substantially prevailed in this court, we direct, in the exercise of our discretion, that the costs in this court upon this writ of error be equally divided.

Reversed and remanded for entry of judgment in accordance with this opinion.

Reversed.