39 N.J. Super. 348 (1956)
120 A.2d 866
SOMERVILLE CONTAINER SALES, INC., A CORPORATION OF MASSACHUSETTS, PLAINTIFF-APPELLANT,
v.
GENERAL METAL CORPORATION, A CORPORATION OF NEW JERSEY, AND M.P. KAUFMAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1956.
Decided February 29, 1956.
Amended on Rehearing March 28, 1956.
*352 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Charles B. Clancy, Jr., argued the cause for plaintiff-appellant (Messrs. Clancy & Clancy, attorneys).
Mr. Milton M. Unger argued the cause for defendants-respondents (Messrs. Milton M. and Adrian M. Unger and Mr. Sam Denstman, attorneys).
Amended on Rehearing March 28, 1956. See 121 A.2d 746.
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal by leave of the Appellate Division, granted pursuant to R.R. 2:2-3(b). We have here to determine whether an order granting a new trial as to both liability and damages in an action for breach of warranty in relation to a contract of sale of goods should be disturbed, in whole or in part. The action under review followed the rendition by a jury of a verdict for the plaintiff in the sum of $25,000.
*353 Plaintiff (hereinafter designated "Somerville Container"), a dealer in and reconditioner of drums and barrels, purchased from the defendant (hereinafter designated "General Metal"), a scrap metal dealer, some 1614 stainless steel barrels in the spring of 1953 at the price of $8 per barrel. These had formerly been used in the since defunct business of the Trommer Brewery and had been disposed of for $1 each to General Metal by Piel's Brewery, successor to Trommer, as "scrap," being regarded by Piel's as unfit for storage and transportation of beer. Under the agreement of purchase from Piel's the barrels were not to be resold to any brewery for use as beer containers. Though controverted, there was evidence sufficient in our opinion to permit a finding of fact that the barrels were expressly warranted by General Metal to the plaintiff to be "perfect, in excellent condition." The seller knew from the buyer that it contemplated reselling them for use by a European brewery. Somerville Container took delivery of the barrels in Elizabeth on April 2 and April 3, 1953. Its representative signed receipts for the barrels on delivery on which there was written, "AS, IS, WHERE IS," but there was proof that the purchaser nevertheless accepted the merchandise in reliance upon the subsistence of the warranty of condition previously given. Cf. R.E. Brooks Co. v. Storr, 111 N.J.L. 316, 318 (E. & A. 1933). Prior to taking delivery, however, Trager, president of Somerville Container, went to Europe with one of the barrels as a sample and sold them to Heineken's Brewery in Rotterdam, Holland, for $15.75 each. This sale was "as per sample and subject to their inspection and approval upon arrival."
Upon the arrival of the barrels at the Heineken's plant, some three weeks after shipment, they were cleaned, brushed and inspected, both visually and by pressure-testing. This consisted of submerging the barrels in water and subjecting them to air pressure to detect leaks. Of the 1614 barrels received, 923 passed Heineken's inspection and were accepted and paid for. Of those rejected by Heineken's, plaintiff sold 220 to other European brewers at $4 each and retained the remainder. Heineken's at once began to use the new acquisitions, *354 a few at a time, in its export trade to the United States. Some of them were found to leak and others to produce deterioration in the beer contents. A Heineken's representative testified at the trial that subsequent investigation revealed corrosion, rust and pitting on the interior surface of some of the barrels, to which the spoilage was partially attributed, while previous defective repair welding was accounted a cause of both leaks and spoilage in other cases. The barrels were retired from use by Heineken's and it has demanded reimbursement for its losses from plaintiff. It has brought no legal action, however, being "convinced the company [Somerville Container] will refund the loss."
Before putting the barrels into use, Heineken's had the name, "Trommer's Brewery," which was embossed on the top end of each of them, removed by mechanical means, and it caused metal plates to be welded thereon, bearing the Heineken's Brewery initials. Defendant produced a metallurgist, who had examined some of the barrels. He testified that the treatment of the barrels, as described, may have produced a deterioration of the metal, evidenced by its magnetism on the tops of the barrels thus processed (stainless steel being described as ordinarily non-magnetic) and of progressive corrosion of the metal.
Heineken's losses arising out of its purchase and use of the ill-fated barrels were represented at the trial to amount to $18,846.78, consisting of the $14,553 paid for the barrels less their acknowledged scrap value of $1 each, or a net direct loss of $13,629, plus consequential damages such as freight, storage, duties, spoiled beer, etc., amounting in the aggregate to $5,217.78. Supporting proof for each of these items is to be found in the record. It does not appear, however, that Heineken's has ever demanded this or any other specific amount from Somerville Container in satisfaction of its claim.
Exclusive of the claim over against it by its subvendee, plaintiff estimates its own net losses flowing from the alleged breach of warranty by defendant to amount to $9,047.50.
The trial court filed a comprehensive opinion in explanation of its decision to grant a new trial on the whole case. It *355 arrived at these conclusions: (a) statements by the defendant's representatives to the plaintiff warranted a finding by the jury that there was an express warranty as to the fitness of the barrels; (b) defendant is not responsible for the amount of any claim by Heineken's against plaintiff because the resale was unattended by any warranty from plaintiff to its subvendee  there was no express warranty in that transaction and an implied warranty is negated by Heineken's reservation of the right of inspection of the barrels and the fact of such inspection, the indication therefrom being that the subvendee was purchasing not in reliance upon the sample shown to it but upon its own inspection and testing of the barrels. There being no showing of a judgment upon, or of any payment by plaintiff to Heineken in settlement of the alleged liability over, the jury was unwarranted in including the Heineken claim in its assessment of damages, as it obviously must have done in arriving at a verdict so substantially in excess of plaintiff's damages in chief. The opinion concluded:
"The amount of the verdict being greatly in excess of any sum to which the plaintiff is lawfully entitled as damages under the proofs and law of this case, I feel constrained to hold that the excessive verdict is the product of mistake or partiality and should be set aside.
Accordingly, the verdict will be set aside and a new trial granted on the whole case."

I.
The main thrust of the argument of appellant is that the trial court ought not to have granted a new trial in toto; that, at the least, the issue of liability was fairly determined by the jury free from any influence of the dispute with respect to damages and that the error by the jury, if any, as to damages, was the consequence of the charge of the court to the jury and in nowise so reflective of mistake or prejudice as to vitiate the verdict as to liability. Plaintiff contends, in the first instance, that the verdict was unexceptionable in law or fact, in its entirety, and should be reinstated as returned; but that, in the alternative, it should stand as to liability *356 and plaintiff be granted its option of accepting a reduction in damages or suffering a new trial as to the quantum of damages only; or, at the very least, that the verdict be permitted to stand as to liability and the new trial be confined to the issue of damages.
We address our attention first to the argument that it was error for the trial court to set aside the verdict in so far as it fixed liability. Upon a motion for a new trial it is, generally speaking, a matter of broad discretion in the trial court as to whether, and to what extent, the verdict should be set aside as vulnerable to the criteria of mistake, partiality, prejudice or passion recounted in R.R. 4:61-1(a). Hartpence v. Grouleff, 15 N.J. 545 (1954). Yet it is by no means a reflection upon a trial court for an appellate tribunal to conclude that there has been error in the exercise of such discretion (Mr. Justice Case, concurring in Hager v. Weber, 7 N.J. 201, at pages 213, 214 (1951)), and there will be no hesitancy in so doing in a case where reason requires. Id.; Dahle v. Goodheer, 38 N.J. Super. 210 (App. Div. 1955), certification denied 20 N.J. 534 (1956), where the subject is considered at length and the authorities are collected. We consider that this is such a case.
The charge of the trial court to the jury contains an observant analysis of the factual proofs bearing upon the controverted issue as to the making of the warranty as to fitness of the barrels and expressly delegated the determination of that issue to the jury. Concerning this question, the opinion of the court, filed in support of the action here appealed, states:
"* * * remembering that the question of the existence of a warranty is ordinarily for the jury and not for the court, I do not feel justified in concluding as a matter of law that the jury could not have found the existence of a warranty which induced the purchase by the plaintiff.
There was ample proof that subsequent events demonstrated that the barrels were unfit for the use intended, that is, for the storage and transportation of beer, and so if the warranty were found to have been made, the other proof was sufficient to justify the finding of a breach of the warranty and an assessment of damages against the defendant seller."
*357 As we have already said, our own inspection of the transcript leads to concurrence with the view that a finding that the warranty was made by defendant is adequately supported by the proofs. Nor have we any just basis to dissent from the concession in the opinion that there was evidence, though controverted, from which the jury could conclude that the barrels when sold were unfit for the use intended. The jury verdict as a determination of liability thus being, in the judgment both of the trial judge and ourselves, of prima facie integrity on the evidence of record, it remains to consider whether the assumed excessiveness of the award of damages establishes the verdict, as stated by the trial court and argued by the respondent, to be the product of "mistake and partiality" in such a sense as to have justified it being set aside in entirety. It is first to be remembered that figures were given in evidence as purportedly representing the losses of Heineken's aggregating over $18,000. As to the propriety of consideration by the jury of the Heineken's losses in the award of damages to plaintiff the jury had this instruction from the trial judge, given at the express request of plaintiff and without any objection or exception from defendant:
"`If you find that the plaintiff is entitled to a verdict against the defendants you should consider in assessing the damages the expenses and direct losses of Heineken's Brewery incurred as a result of defective condition of the barrels'  or alleged defective condition of the barrels."
It is thus apparent that the jury, in apparently including the Heineken's claim against plaintiff in its assessment of damages against defendant, did exactly what the trial court said it might properly do if it found defendant accountable for breach of warranty. Having in mind that the jury had no qualifying instructions in respect to what guide it should follow in ascertaining the extent to which it might allow the supposed liability over to Heineken's in estimating plaintiff's damages, and that an addition of all the damage figures spread upon the record before it results in a sum well in excess of $27,000, we are able to perceive no rational basis for a conclusion of causal connection between the *358 amount of the jury verdict ($25,000) and the affirmative conclusion of liability on the part of the defendant, much less for an inference that the jury was motivated by partiality, prejudice or mistake in concluding for liability. See Gallichio v. Gumina, 35 N.J. Super. 442, 447 (App. Div. 1955). Nor is any such basis advanced in the otherwise well-considered opinion of the trial court. In these circumstances, the setting aside of the verdict in respect to liability unwarrantably deprived the plaintiff of its hard-won verdict on that issue at the hands of the jury.
It has long been the law that where, upon the whole case, it appears that the jury has settled the question of liability fairly and upon sufficient evidence so that, disassociated from other questions, it ought to stand; but that there has been such error in the determination of damages as requires a new trial upon that question, the court has the power to and should confine the new trial to the question of damages. Robinson v. Payne, 99 N.J.L. 135, 142 (E. & A. 1923); Paolercio v. Wright, 2 N.J. 412, 417 (1949); Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 149 (1950); Dahle v. Goodheer, supra (38 N.J. Super., at page 216).
It is consequently our conclusion that the least the plaintiff is entitled to on this appeal is a reversal to the extent of preserving its trial victory on the issue of liability.

II.
We next consider whether we can further sustain the position of the plaintiff to the extent of holding that it made a good case at the trial for the inclusion of the Heineken's losses in the verdict against the defendant, contrary to the conclusion of the trial court in its opinion on the motion for a new trial. In this regard there are implicated the conflicts of law question concerning the law controlling the issue of liability as between plaintiff and Heineken's and the matter of evidence of such law. That sale having been made in Holland and delivery there having been contracted for, the Dutch law controlled. Colozzi v. Bevko, Inc., 17 N.J. 194, 202 (1955); Hinkly v. Freick, 86 N.J.L. 281 (E. & A. *359 1914). No proof as to the Dutch law concerning the liability of a seller as warrantor of the fitness of goods was offered at the trial. The trial court apparently assumed that in the absence of such proof it might indulge the presumption that the law of the Netherlands is the same as that of New Jersey. Since that country is not a common-law jurisdiction the assumption was correct and our further consideration of the question of the liability of plaintiff to Heineken's will proceed on the basis of the Uniform Sale of Goods Law (R.S. 46:30-1 et seq.) and cases construing it; N.J.S. 2A:82-27; 2A:82-31; Leary v. Gledhill, 8 N.J. 260, 269 (1951).
The main questions requiring consideration at this point are: (a) whether the damages of a buyer of goods for breach of warranty of quality or merchantability may include losses of a subvendee arising from the breach for which reimbursement is being demanded against the buyer-plaintiff and as to how the issue should be submitted to a jury, and (b) whether an implied warranty of merchantability arises where a sale is "by sample and subject to inspection by the buyer," under the circumstances related above. We consider these questions in the order stated.
The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from such breach. R.S. 46:30-75(6). Where the warranty is of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty. Id. (7). It is elementary that where the buyer is, within the contemplation of the seller, buying for resale, the buyer's loss of profits on account of the breach is recoverable. Holland v. Jones-Howe Co., 98 N.J.L. 787 (E. & A. 1923). Since this was the case here plaintiff would be entitled to recover its loss of profits on the resale to Heineken's (assuming such a loss; see IV hereinafter), if considered independently of the involvement of the asserted liability over *360 to Heineken's. We thus arrive at the question, assuming a claim for reimbursement by Heineken's, as to whether the defendant is answerable to its vendee, the plaintiff, therefor? There is no satisfactory answer to this question, within the peculiar circumstances here presented, in any decided New Jersey case. The closest authorities are Lissberger v. Kellogg, 78 N.J.L. 85 (Sup. Ct. 1909) and Lodge & Shipley Co. v. Binnse, 24 N.J.L.J. 430 (Cir. Ct. 1901), the former decided upon the authority of the latter, Mr. Justice Swayze having written both opinions, the earlier as circuit judge. In both cases a purchaser of goods was allowed in his measure of recovery of damages for breach of warranty of quality or fitness a sum paid to his subpurchaser in settlement of the claim of the latter for losses growing out of the same breach, under the theory that "damages which the vendee was under obligation to pay to a subvendee were also recoverable when they are such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of its breach." (78 N.J.L., at pages 89, 90). Such a situation constitutes a showing of "special circumstances" within the meaning of the cited section of the Sales Act. Fred Wolstenholme, Inc., v. Jos. Randall & Bro., Inc., 295 Pa. 131, 144 A. 909, 912 (Sup. Ct. 1929).
In the present case, however, no dollars and cents claim was ever submitted by Heineken's to Somerville Container nor payment made on account of any such claim, and no action was brought by Heineken's during the year and one-half between the subsale and the institution of the present action, or thereafter. These considerations do not necessarily preclude recovery by the buyer for the damages of the subpurchaser if the "probable liability" to the subvendee can be established. 3 Williston on Sales (rev. ed. 1948), § 614a, pp. 377, 378; 77 C.J.S., Sales, § 384, p. 1338; Randall v. Raper, E. & B. 84, 120 Eng. Rep. 438 (Q.B. 1858); Fred Wolstenholme, Inc., v. Jos. Randall & Bro., Inc., supra; Grupe v. Glick, 26 Cal.2d 680, 160 P.2d 832 (Sup. Ct. 1945); Walpole v. Prefab Mfg. Co., 103 Cal. App.2d 472, *361 230 P.2d 36 (D. Ct. App. 1951); Davis v. Ferguson Seed Farms, 255 S.W. 655 (Tex. Civ. App. 1923); see Buckbee v. P. Hohenadel, Jr., Co., 244 F. 14, 23, L.R.A. 1916, c. 1001 (7 Cir. 1915); Maryland Coal & Coke Co. v. Quemahoning Coal Co., 176 F. 303, 308 (4 Cir. 1909); cf. Boyce v. Fowler, 87 F. Supp. 796 (D.C. Mass. 1949). Since many contingencies may in fact avert or reduce the ultimate satisfaction of the subvendee's claim by the plaintiff, notwithstanding a current recovery inclusive thereof, the rule has been viewed with some concern, opinions of Erle, J. and Wightman, J., in Randall v. Raper, supra (120 Eng. Rep., at pp. 440, 441). But it has been pointed out that analogous considerations have not been allowed to forestall recovery in other fields for obligations incurred, but not yet paid, arising out of actionable fault or default. Buckbee v. P. Hohenadel, Jr., Co., supra (224 F., at page 23). Yet the likelihood of resistance to payment, of settlement out of court of litigated and unlitigated claims of this character at less than face amount, as in Lodge & Shipley Co. v. Binnse, supra, and the possibility of failure of recovery in a later action before a different court and jury would seem to us to indicate the appropriateness, in charging a jury in respect to this kind of damage item, of including comment in respect to all the hazards which may beset the actual collection of commercial claims for breach of warranty, for consideration of the jury. While a degree of uncertainty in jury assessment of damages is frequently inevitable and practicably unavoidable, McCormick, The Standard of Certainty in the Measurement of Damages, 43 Yale L.J. 1108 (1934), and see Weiss v. Revenue B. & L. Ass'n, 116 N.J.L. 208, 210 (E. & A. 1936), Oliver v. Autographic Register Co., 126 N.J. Eq. 18, 24, 25, 26 (Ch. 1939), and Iuliucci v. Rice, 130 N.J.L. 271, 275 (E. & A. 1943), yet the jury ought to have such help as the court can give it in this kind of case. The judicial aim for substantial justice should inspire a plain and realistic exposition in the charge to the jury of all the considerations which it should weigh as relevant in judging the probabilities as to the ultimate translation, in a case, for example, like *362 that before us, of the Heineken's claim for some $18,000 into a cash realization from the plaintiff for all or part of that sum. It goes without saying that the court should also instruct the jury with respect to the law applicable to the subclaim and require it to determine, on the facts adduced, and after consideration of the factors aforesaid, what the reasonably probable accountability of the plaintiff to the subpurchaser will be, and to allow that amount and no more in its assessment of the plaintiff's damages.
We conclude that the Heineken's damage claim was not put beyond the pale of the plaintiff's recovery by reason merely of its not having been paid or established. But it was clearly appropriate and necessary, since the issue was raised, for the court to satisfy itself from the evidence as to whether the claim of the subvendee was well-founded as a matter of law. Cf. Maryland Coal & Coke Co. v. Quemahoning Coal Co., supra (176 F., at page 308). We thus arrive at the second question posed at the head of this section of the present opinion. Was there an implied warranty of merchantability from Somerville Container to Heineken's?
Plaintiff concedes there was no express warranty to Heineken's. It postulates its asserted liability over solely on R.S. 46:30-22, which provides that in a case of sale "by sample," if the seller is a dealer in goods of that kind there is an implied warranty that the goods shall be free from any defect rendering them unmerchantable which would not be apparent on reasonable examination of the sample. The trial court, as noted, in granting a new trial, concluded this was not a sale by sample because the sale was expressly subject to inspection of the barrels by the purchaser, and that this fact, together with the fact of the actual inspection and the rejection by the purchaser of many barrels in the lot tendered, indicated that Heineken's was relying, not upon the sample, but upon its own examination, thus negativing a sale by sample as contemplated by the statute. An examination of the authorities leads us to agreement with the determination stated.
The statute does not define a "sale by sample." *363 Resort must therefore be had to the pertinent authorities antedating the statute as well as those construing R.S. 46:30-22 (Uniform Sale of Goods Law, L. 1907, c. 132) and its legislative counterparts elsewhere. In essence, the question is one of intent. The use of a sample is simply a special form of representation as to the character of merchandise sold or to be sold and the circumstances attending its use may cast light upon the intent of the parties as to whether reliance was to be had upon the sample by the buyer in respect to character or quality. Burdick, Law of Sales of Personal Property, (3d. ed. 1913), §§ 168, 169, pp. 119, 120. 1 Williston, Sales, op. cit., supra, § 252, p. 671. It follows that "as the warranty in a sale by sample, like other warranties, requires for its existence a reliance by the buyer upon the statement or representation of the seller, if the buyer refuses to rely upon the sample and makes an examination of the bulk for himself, upon which he places his whole reliance, the idea of warranty is excluded." Id. § 253, p. 675; Annotation, 12 A.L.R.2d 525, 541, 542; Salisbury v. Stainer, 19 Wend. 159, 32 Am. Dec. 437, 438, 439 (N.Y.S.Ct. Jud. 1838); Rockford Wholesale Grocery Co. v. Stevenson, 65 Ill. App. 609, 611 (App. Ct. 1895); Cudahy Packing Co. v. Narzisenfeld, 3 F.2d 567, 571 (2 Cir. 1924); People v. Western Picture Frame Co., 368 Ill. 336, 13 N.E.2d 958, 959 (Sup. Ct. 1938); Gillette v. Kelling Nut Co., 185 F.2d 294, 297 (4 Cir. 1950); Loose v. Flickinger, 121 Cal. App. 77, 8 P.2d 517, 518 (D. Ct. App. 1932).
In the case of Stewart v. M.N. Voll & Son, 81 N.J.L. 323 (Sup. Ct. 1911), relied upon by plaintiff, it appears that the seller expressly represented the goods to be "a fine lot of potatoes" and that there was a true reliance upon some of the merchandise as a sample.
While ordinarily the issue presented in this kind of problem is one of fact for the jury, we think the evidence in the present case was so overwhelmingly contrary to the thesis that Heineken's was purchasing in reliance upon the sample barrel as to have made the determination here properly one of law for declaration by the court. This is particularly *364 manifested by Heineken's retention of and payment for 923 of the barrels after its own inspection and test, notwithstanding that the test, and in some cases, a visual inspection, revealed almost 700 others of the lot to be defective.
Plaintiff urges upon us the consideration that the defects here involved were latent and not susceptible of ascertainment upon reasonable examination. But this is of no consequence where there is no warranty, express or implied, as we have held was here the case as between plaintiff and its subvendee. To be distinguished is the situation where there is properly found to be a warranty, express or implied. In such case the buyer does not lose his right to hold the seller for breach, notwithstanding an inspection by the buyer which fails to disclose latent defects. Annotation, 168 A.L.R. 389, at pp. 409, 411.

III.
One further consideration which has occurred to us in support of the position that the $25,000 jury verdict should not be permitted to stand ought to be mentioned in view of the possible contingency of a new trial. There was apparently an inadvertent duplication of damages to the extent of $7,153.25. It will be recalled that plaintiff's estimate of its damages in chief came to a net amount of $9,047.50. In arriving at this figure plaintiff began with its loss of profit on all of the barrels purchased, estimated at the rate of $7.75 per barrel on the basis of the resale price to Heineken's. For the 923 barrels taken and paid for by Heineken's the profit to plaintiff was $7,153.25. But in estimating plaintiff's liability over to Heineken's the full purchase price paid by Heineken's in the amount of $14,553 (which includes plaintiff's profit of $7,153.25 aforesaid) was taken as the starting point of the computation of plaintiff's putative liability over. As plaintiff had been paid in full, an allowance to it of damages on the basis of the combination of factors aforesaid would have placed it in a better position than that for which it had bargained with defendant, to the extent of the said $7,153.25. Boyce v. Fowler, supra (87 F. Supp., at pages 799, 800). This duplicative recovery *365 undoubtedly reflects itself in the $25,000 verdict returned by the jury in this case, as, without it, our own computation of all the other damage figures adduced in evidence in relation either to plaintiff or to Heineken's, direct and consequential, comes to a total of only $20,731.

IV.
It remains to consider the extent to which we should reverse. The question is whether any figure representative of plaintiff's damages arising from the breach of warranty, exclusive of its supposed liability over to Heineken's, can be gleaned from the record so that we might properly offer plaintiff the choice between taking a judgment reduced to such an amount and a new trial as to damages. The figure suggested for that purpose in the briefs was, as noted, $9,047.50. This, however, was predicated on a loss of the profit on all of the barrels on the resale to Heineken's. But only $4,004.25 of that loss has thus far eventuated (691 barrels rejected, at a lost profit of $7.75 per barrel, less salvage of $880 on 220 barrels and $471 on 471 barrels). Plaintiff still retains the profit on the other barrels. We held in II, supra, that plaintiff was not demonstrably liable to Heineken's for breach of warranty on the facts adduced at the trial and so its loss of profits of the resale may never become greater. We certainly cannot here speculate on what plaintiff's showing of damages may be upon a new trial. Without in any way implying a view in that regard, we are unable to find a basis for the establishment of minimum damages on the record of the trial heretofore had in excess of the sum of $4,004.25.
The order under review is reversed and the cause remanded for a new trial as to damages only, unless the plaintiff shall, within 10 days of the entry of the mandate herein, elect to accept a judgment against the defendant in the sum of $4,004.25, together with interest from May 1, 1953, in which event judgment shall be entered in that amount.
At the argument counsel for the plaintiff agreed that the appeal should be dismissed as to the defendant, M.G. Kaufman, and it is so directed.